Richmond *v.* Boone.

[86 South. 298.　No. 21217.]

Judgment. *Decree not determining validity of title to personalty not res judicata as to possession.*

　Where the validity of title to personal property was not in issue on the face of the pleadings, and it does not appear from the record to have been decided by the court in a chancery suit to reform and foreclose a deed of trust, such suit is not *res judicata* in a subseqent suit between the same parties for the possession of such personal property.

Appeal from circuit court, Jefferson Davis county.
Hon. W. A. Shipman, Special Judge.

Action of replevin by Jesse Richmond against M. L. Langston, with claim by W. F. Boone. Judgment for claimant upon a peremptory instruction, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

*C. E. Thompson* and *Watkins & Watkins,* for appellant.

Unless the appellant's claim in respect to the two animals was precluded in the final decree rendered, Vol. 2, page 17, in the chancery suit referred to, confessedly, under the undisputed evidence, he was entitled to the possession thereof.

We are unable, under any view of the case, to see how the decree in question could be held to affect the contest between the appellant and the appellee in respect to the two mules. They are not involved in the remotest manner in the decree, and their ownership was not put in issue by the pleading in the case. The court held: (A) That the appellee had no claim to the land in section 31 because it was the homestead of Langston and wife and that his wife did not join in the deed of trust, and for the further reason that the deed of trust could not be reformed as against Richmond. (B) The court held that as to the land in

section 6, appellee's deed of trust was a prior mortgage, and whether the appellant knew of the same or not, the deed of trust having been placed on record covered the land, and therefore the chancellor properly gave the appellee relief by condemning the land to be sold.

The question involved in this case is as to the rightful ownership and possession of two iron gray mules, to which the appellee had abolutely no claim whatsoever on November 30, 1914, when the original bill was filed. Upon the other hand, on that date, they had undisputedly been delivered and the title vested in appellant by Langston. The only title which the appellee ever got to these two mules was the bill of sale from Langston to him, which occurred in January, 1915, and upon that date, confessedly and undisputedly, title to the two mules was in the appellant, and he had leased the two mules to Langston for the year 1915.

Upon the question of the conclusiveness of the adjudication in the chancery court we refer this court to the following authorities: In 23 Cyc., page 1295, the rule is announced as follows:

"The rule is often stated in general terms that a judgment is conclusive not only upon the question actually contested and determined, but upon all matters which might have been litigated and decided in that suit; and this is undoubtedly true of all matters properly belonging to the subject of the controversy and within the scope of the issues, so that each party must make the most of his case or defense, bringing forward all his facts, grounds, reasons or evidence in support of it, on pain of being barred from showing such omitted matters in a subsequent suit; and it is also true that where the second suit is upon the same cause of action, all matters which might have been litigated are conclusively settled by the judgment; and that generally the estoppel applies where matters which should have been urged as a defense in the first suit are attempted to be made the basis of a second action, or according to some of the authorities, where defenses which were avail-

able against an adverse claim in the first suit, but not then set up, are sought to be used in a second action, either by way of defense or as the foundation of a claim for relief. But the weight of authority is that where the second action, although between the same parties is on a different cause of action the judgment is not conclusive on all matters which might have been litigated in the former action, but only as to such points or questions as were actually in issue and adjudicated therein."

In 23 Cyc., page 1300, the following rule is announced: "The true test is identity of issues. If a particular point or question is in issue in the second action, and the judgment will depend upon its determination, a former judgment between the same parties will be final and conclusive in the second if that same point or question was in issue or adjudicated in the first suit, otherwise not. Or, as the rule is otherwise stated, in a second action between the same parties on a demand different from that in the first action, the judgment in the first action is an estoppel only as to the points controverted on the determination of which the finding or verdict was rendered. And in order that this rule should be applied, it must clearly and positively appear, either from the record itself, or by the aid of competent extrinsic evidence, that the precise point or question in issue in the second suit was involved and decided in the first."

In 23 Cyc., page 1304, the following rule is announced: "The great preponderance of authority sustains the rule that the estoppel of the judgment covers all points which were actually litigated, and which actually determined the verdict or finding, whether or not they were technically in issue on the face of the pleadings. But a matter is not in issue in the suit which was neither pleaded nor brought into contest therein, although within the general scope of the litigation and although it might have determined the judgment if it had been set up and tried."

In 23 Cyc., page 1313, the following rule is announced: "If a particular point was not in issue in the former suit

either on the face of the pleadings or in the sense of being actually tried as the decisive question in the case, it is not concluded for the purpose of a subsequent suit on a different cause of action and it makes no difference in the application of the rule that it may be expressly or tacitly involved in the judgment, or may arise on an analogous or similar state of facts."

We therefore respectfully submit that the court was in error in so holding. Upon the other hand, a peremptory instruction should have been given in favor of the appellant. Not only that, if your honors please, but the deed of trust given by Langston to the appellee and Selman was barred by the statute of limitations January 1, 1915, since the indebtedness matured December 1, 1908, and while the appellee had no right or claim to the two mules which had been brought back from Louisiana, their attempted conveyance by Langston to the appellee, as against the appellant, was without consideration.

We respectfully submit that the judgment of the court below was wrong, that the case should be reversed, and a judgment entered in this court for the appellant.

*Watkins & Watkins,* for appellant.

Appellee's counsel concede in their brief that the appellant should have recovered in this case unless the decree in the chancery court was an adjudication in favor of the appellee's right to the mules in question. It is unnecessary to argue this question. A mere statement of the facts in the case disposes of it. This is a replevin suit in which the appellee is the plaintiff and the appellant the defendant. The appellee must recover upon the strength of his legal title. The deed of trust which he claims to be the subject of adjudication was given in 1908, nearly seven years prior to the time the mules in question were taken to Louisiana.

The original bill of complaint was filed, asserting rights under the deed of trust given in 1908 before the mules were even brought from Louisiana.

The two mules in question could not have been involved in the chancery suit, because they were never in or connected with the deed of trust. The original bill was to foreclose a lien upon certain land described in the deed of trust given in 1908. There is no contention that these mules were involved in that deed of trust. There were two mules involved therein, but Langston took them to Louisiana, swapped them off, and sold the two mules which he received for them to the appellant, and they are the mules involved in this suit. Under no conceivable theory could these two mules have been adjudicated in the chancery suit, which was a proceeding to foreclose a deed of trust given in 1908.

Appellee's counsel state that Richmond consented for Langston to take the two mules subject to the mortgage out of the state and swap them for two mules free of mortgage debt. Even if that should be true, the appellee could not maintain replevin for the two mules in question, since title to the two mules in question would not be vested in him by any such proceeding.

If any further answer to the argument is needed, it is found in the mere statement that Richmond emphatically denies that he ever entered into any such agreement with Langston as is contended, denies that he ever knew of the deed of trust to Boone. A peremptory instruction was given against Richmond, the appellant and, therefore facts supporting his theory of the case must be taken as true.

We respectfully submit that the case should be reversed and a judgment entered in favor of the appellant.

*Magee & Gibson,* for appellee.

We submit that this question has been passed upon and determined by the chancery court of Jefferson Davis County in the suit referred to and set out in the record of the instant case. In that case the appellee here was the complainant and the appellant here and one N. L. Lang-

ston were the defendants. The parties here and in that case were one and the same and it became necessary in that case to inquire into the ownership of the identical mules involved in the case at bar. This was done and the chancellor decreed that these mules belonged to appellee and in the final decree in that case credited appellee's account against Langston with the purchase price of the mules. It was very necessary for the chancellor to pass upon this identical question when that case was before him and it was passed upon and determined as is shown by the record.

The very same authorities cited by appellant in his brief sustain the contention of the appellee that the lower court correctly gave the peremptory instruction complained of. Both appellant and appellee claim to have bought the mules from Langston, appellant, in 1915, January 25th of that year; at least taking a rent note for same on this date and appellee on January 1, 1915.

Appellant claims to have bought one pair of mules from Langston in 1911 and received a deed from Langston for them, and on these same mules it is shown that appellee had a deed of trust dated and recorded in 1908. This pair of mules were carried to Louisiana by Langston with the consent of appellant and traded there for the mules which are the subject of this suit.

So that if priority of right under the deed to appellant and the deed of trust to appellant should become involved in this suit, appellee's claim would be superior and paramount to that of appellant.

The record in this case makes it appear that the two negroes, Richmond and Langston, were attempting to hand Mr. Boone a deed of trust under which he could take neither mules nor land to satisfy his debt against Langston. They succeeded with the land because Langston's wife did not sign the deed on the homestead. In order to defeat Boone's deed of trust on the first mules, Richmond consented for Langston to carry them to Louisiana and trade them for a pair that he thought Boone would have no claim to.

In the meantime, however, Boone knowing nothing
about Richmond's claim to the mules brought back from
Louisiana bought them from Langston and credited the
proceeds on Langston's account. As will be seen from
the record evidence and the exhibits introduced in evi-
dence in the chancery court suit referred to above this en-
tire question was considered and passed upon by the chan-
cellor and Langston's account was credited in the decree
with the purchase price of the mules—these same mules
in controversy here.

So we respectfully submit that the ownership of the
mules was passed upon and adjudicated by the chancery
court and that the appellant is estopped now to claim them.

This was the point involved and which controlled the
lower court in the disposition of the case there.

WILLIAM H. COOK, Judge, delivered the opinion of the
court.

Appellant, Jesse Richmond, instituted an action of re-
plevin against M. L. Langston in the circuit court of Jeff
Davis county for the recovery of the possession of two
mules alleged to be wrongfully detained by Langston. Ap-
pellee, W. F. Boone, filed a claim for the mules in question,
and the trial of this claimant's issue resulted in a judgment
against Richmond and the sureties on his forthcoming
bond, and from this judgment Richmond prosecutes this
appeal.

A statement of the facts in chronoligical order will ma-
terially aid in understanding the question presented here
for decision. In 1908 M. L. Langston, who was the owner
of certain land and personal property, being indebted to
W. F. Boone, executed a deed of trust to secure this in-
debtedness, and this instrument was duly recorded. This
deed of trust covered two mules and two hundred and
forty acres of land, but by mistake two hundred acres of
land was erroneously described as being located in section
30, instead of section 31. In 1910 Langston executed another

deed of trust on his land and mules to secure an indebtedness owing to J. B. Russell, and in 1911, after Russell had begun proceedings to foreclose this deed of trust, Langston arranged with appellant, Richmond, to pay off the indebtedness to Russell, and agreed to convey the land and mules to Richmond. This agreement was consummated, and on December 23, 1911, Langston conveyed by deed to the appellant, Richmond, the land and mules. Richmond thereupon leased the land and mules to Langston for an annual rental, and this arrangement appears to have continued until 1914, when Langston carried the two mules to Louisiana and traded them for the two gray mules which are the subject of this litigation.

The evidence is uncontradicted that this trade was made with the consent of Richmond, and that upon Langston's return from Louisiana he tendered these mules in place of the ones traded off, and Richmond accepted them. On January 1, 1915, Langston sold these mules to appellee, Boone, giving a bill of sale therefor, and the agreed purchase price was credited on Langston's indebtedness to Boone. On January 15, 1915, Boone resold the mules to Langston, taking a note with reservation of title for the purchase price. On January 25, 1915, Langston executed a note to appellant, Richmond, for rent of the mules for the year 1915, and in December following he refused to surrender possession of the mules, and thereupon Richmond instituted suit in replevin to recover possession of them. Thus ended Langston's devious dealings with these mules.

In November, 1914, appellee, Boone, filed a bill in the chancery court against M. L. Langston and Jesse Richmond, seeking to reform the deed of trust which was executed in his favor in 1908, and seeking a foreclosure thereof. An amended bill was filed in February, 1915, and upon final hearing the chancellor dismissed the bill as to the land alleged to have been conveyed by mistake, but ordered the remaining land sold, and rendered a personal decree against Langston for the balance due, after allowing as a

credit the value of the two mules sold to Boone by Langston.

At the conclusion of the evidence in this case a peremptory instruction was granted in favor of the claimant, Boone, upon the theory that the decree in the chancery suit was an adjudication of appellee's right and title to the mules. We think this was error. The chancery proceedings sought only to reform and foreclose a deed of trust executed in 1908, and the mules involved in this suit were not covered by that deed of trust, and they are not mentioned in any of the pleadings in the chancery suit. In fact, the appellee, Boone, did not acquire the claim of ownership which he is here asserting until after the original chancery bill was filed.

In determining the balance due complainant, Boone, at the date of the decree, the chancellor allowed Langston credit for the value of the mules which he had sold to Boone while the chancery suit was pending; but the allowance of this credit does not constitute an adjudication of appellee's right and title to the mules. The question of the validity of appellee's title does not appear to have arisen until long after the conclusion of the former suit. It was not in issue in the former suit on the face of the pleadings, and it does not appear from the record that this question was decided by the court. The rule which controls this case is announced in 23 Cyc. pp. 1313, 1321.

It follows from these views, that appellee's motion for a peremptory instruction should have been denied and upon this record we think appellant's request for a peremptory instruction should have been granted.

Reversed, and judgment here for appellant.

*Reversed.*